955 So.2d 1031 (2006)
Kelley Edmondson LEOPOLD
v.
William F. LEOPOLD.
2040611.
Court of Civil Appeals of Alabama.
October 20, 2006.
*1032 William Eric Colley, Fort Payne, for appellant.
Nancy S. Gaines of Gaines & Gaines, L.L.C., Magnolia Springs, for appellee.
PITTMAN, Judge.
Kelley Edmondson Leopold ("the mother") appeals from a judgment modifying the amount of child support and alimony that William F. Leopold ("the father") was responsible to pay.
On August 25, 2004, the father initiated an action in the DeKalb Circuit Court ("the trial court") seeking a modification of the parties' divorce judgment so as to reduce his child-support and alimony obligations. In his complaint, the father noted that the parties had been divorced by the Chancery Court of Giles County, Tennessee, in March 1999; the father filed a copy of the Tennessee court's divorce judgment with the trial court for the purposes of domesticating that judgment. The mother filed an answer and a counterclaim in which she requested that the trial court determine that the father was in contempt for failing to comply with numerous provisions *1033 of the parties' divorce judgment, including but not limited to having failed to pay child support, to provide medical coverage for the parties' children, and to pay certain debts.
The trial court conducted a hearing on September 20, 2004; at that proceeding, the mother and the father acknowledged that they had become residents of Alabama and agreed that the Tennessee judgment should be registered as a foreign child-custody judgment pursuant to Ala. Code 1975, § 30-3B-305. The trial court entered an order registering the Tennessee judgment as a foreign child-custody judgment on September 24, 2004, and it scheduled the modification and contempt matters for a subsequent hearing.
The trial court conducted an ore tenus proceeding on January 11, 2005; at that hearing, the trial court proceeded to accept testimony and documentary evidence from the mother and the father. During that proceeding, the mother testified that in the parties' divorce judgment the mother had been awarded custody of the parties' two minor children and that the father had been ordered to pay $552 in monthly child support and to pay an arrearage of $6,016.60 in pendente lite alimony. She also noted that the only time during the years following the divorce that the father had paid any amounts owed to her had been when she had filed (or threatened to file) actions against him seeking findings of contempt. The mother also noted that at the time the parties had divorced, the father had been awarded a family business and the marital residence; the mother had been forced to seek new employment and new housing for herself and the parties' two children. The mother stated that she had obtained employment at Edmondson Mobile Home Supply and that her gross monthly salary was $1,075.
The trial court admitted into evidence spreadsheets and other financial records into evidence that indicated that the father had never complied with the financial mandates of the divorce judgment. The father insisted that he was unable to meet his monthly child-support obligation because he was employed as a church janitor earning an annual salary of only $18,574.40, from which amount the employer was deducting the monthly amounts of $156.52 for health-insurance premiums to cover all of his children and $283.83 for child-care costs for two younger children not at issue in this action. Based upon the father's financial testimony, his monthly disposable income after those deductions totaled $1,107.52. The father stated that since the divorce he had become the custodial parent and sole source of support for two other children. He agreed with the mother that he had been unable to make most of the child-support payments that had come due between 1999 and the time of trial and that a large arrearage had accumulated.
The trial court entered its judgment on February 14, 2005. In that judgment, the trial court specifically determined that the father was not voluntarily underemployed; that court ordered the father to maintain health-insurance coverage on the children in lieu of making prospective monthly child-support payments. The judgment also contained the following provision:
"3. The [father] owes the [mother] the sum of $39,124.91 in unpaid child support. The [mother] is awarded a judgment against the [father] in the amount of $39,124.91, plus interest. The [father] owes the [mother] the sum of $6,016.60 in unpaid alimony. The [mother] is awarded a judgment against the [father] in the amount of $6,016.60, plus interest. The [mother] shall not execute upon said judgments so long as the [father] pays *1034 to the [mother] the aggregate sum of $100 toward said judgments."
Additionally, the trial court reiterated that the Tennessee judgment ordering the father to pay $4,063 to defray the mother's attorney's fee was a final judgment. Finally, the trial court modified the parties' divorce judgment and relieved the father from paying any future alimony and from maintaining a life-insurance policy in the amount of $100,000 to benefit the parties' children.
The mother filed a postjudgment motion, and the trial court denied that motion on March 22, 2005. The mother filed a timely appeal challenging the trial court's judgment as it relates to the modified child-support amount and to the stay of execution as to the arrearages that were reduced to a money judgment. We affirm in part, reverse in part, and remand.
Our standard of review is well settled. When a trial court bases its decision on ore tenus evidence, its judgment is presumed correct and will not be reversed on appeal absent a plain and palpable abuse of discretion. See Somers v. McCoy, 777 So.2d 141, 142 (Ala.Civ.App. 2000), and Scholl v. Parsons, 655 So.2d 1060, 1062 (Ala.Civ.App.1995). In addition, matters relating to child support, including modifications of a child-support obligation, rest soundly within the trial court's discretion and will not be disturbed absent evidence of an abuse of discretion or evidence indicating that the judgment is plainly and palpably wrong. See Berryhill v. Reeves, 705 So.2d 505, 507 (Ala.Civ.App. 1997); see also Hertzberg v. Gainey, 855 So.2d 561, 564 (Ala.Civ.App.2003).
The mother initially contends that the trial court abused its discretion by deviating from the child-support guidelines set forth in Rule 32, Ala. R. Jud. Admin. She asserts that the evidence at trial was undisputed that the father had continually failed to pay the monthly amount of child support required in the parties' divorce judgment, even after receiving a downward modification of the obligation in September 2004 from $552 to $274. The primary reasons that the father cannot support the parties' two children, the mother claims, are that he closed his privately owned business from which he had earned $55,000 per year during the marriage and that he became the sole source of support for two children he had fathered with two different women following the parties' divorce. Although she concedes that the father's income has decreased in the period following the parties' divorce, the mother insists that the father's "new family" cannot take precedence over the parties' children.
The mother cites State ex rel. O'Neal v. Jones, 646 So.2d 150 (Ala.Civ.App.1994), to support her contention that the father was not entitled to have his child-support obligation reduced to an amount less than the amount provided under the Rule 32 child-support guidelines. In Jones, the trial court had made a determination that the paying spouse's financial condition required a deviation from the application of the child-support guidelines; that decision was primarily based upon the fact that the paying spouse had remarried and had become financially responsible for a new set of children. This court reversed the trial court's judgment and stated that
"the father's primary legal and moral duty to these children is not diminished by his duties to his subsequent `new family.' The father's new family is inadequate justification for deviating from the guidelines, and the trial court's decision in that regard is error."
646 So.2d at 151. We conclude that Jones is distinguishable from the present case.
*1035 The father testified that he earned approximately $1,548 in monthly gross income from his employment as a janitor; the mother's monthly income was $1,075. Applying the provisions of Rule 32, Ala. R. Jud. Admin., and the figures contained in the tables appearing in the Appendix to Rule 32, Ala. R. Jud. Admin., to those amounts, we can calculate that the father's child-support obligation would be 59% of $607 per month, or $358.13. Subtracting the father's $156.52 medical-insurance premium that he pays to obtain coverage for all of his children from that figure results in a difference of $201.61. If the only evidence before the trial court had been the father's expenses relating to his additional children, the rationale of Jones might have required this court to reverse the child-support award. In this case, however, the mother conceded that the father's income had decreased since the divorce. In addition, the trial court determined that, because the mother did not qualify for health insurance through her employment, ordering the father to maintain health-insurance coverage for the children was the best use of his disposable income. In addition, the trial court ordered the father to pay for one-half of all the children's uncovered medical and dental expenses. We conclude that the trial court could properly deviate from the Rule 32 child-support guidelines to fashion this award that guarantees that the parties' children will receive basic medical coverage as part of the father's continuing duty to support the parties' children.
The trial court also admonished the father to continue to seek more lucrative employment in order to fulfill his support obligations, and it placed the case on a continuing administrative docket so that a timely revision of the child-support award could be made upon proof of a positive change in the father's income. We note for clarification that a trial court maintains continuing jurisdiction over child support and child-custody matters. See Ex parte Carstens, 728 So.2d 128, 132 (Ala.1998); see also Gross v. Loewen, 522 So.2d 306 (Ala.Civ.App.1988), and Brown v. Brown, 476 So.2d 114 (Ala.Civ.App.1985). Moreover, pursuant to Alabama's standards relating to the reduction of delay in judicial administration, only "[e]xceptional cases in which the court's jurisdiction is stayed or precluded may be transferred from the active docket to the administrative docket." See Recommendations of the Circuit Judges Time Standards Committee, Recommendation II (emphasis added).
Turning to the mother's assertion that the trial court abused its discretion when it prohibited the mother from attempting to collect the arrearage award, we note that the mother did not ask this court to reverse the trial court's arrearage-repayment schedule; she only requested that she be allowed to collect the arrearage award by other legal means. Although the father invites this court to overrule Osborne v. Osborne, 57 Ala.App. 204, 326 So.2d 766 (Ala.Civ.App.1976), we note that our Supreme Court reaffirmed the doctrine that arrearages may be collected as any other debt in Ex parte Morgan, 440 So.2d 1069 (Ala.1983). In Osborne, this court noted:
"We comprehend that a contempt of court may be purged by an order of payment of a sum upon past-due installments, but such order should not be a bar to collection of the judgment by execution or garnishment if assets of [the] defendant are available to such process. . . . We therefore follow the rule that accrued installments of support are final judgments and may be collected as any other judgment. An order of the trial court permitting the payment of such judgments in installments *1036 is not a bar to any other process for collection of judgments."
Osborne, 57 Ala.App. at 207, 326 So.2d at 768 (emphasis added). Moreover, in Ex parte Morgan, supra, our Supreme Court stated that "past due installments of child support . . . create a final monied judgment, and that a writ of garnishment is a legally permitted method of collecting that judgment." Morgan, 440 So.2d at 1072.
In Osborne, the trial court had determined that an arrearage of $12,220 existed and ordered that the arrearage judgment be paid in monthly installments of $100; this court recognized that such a repayment plan would make it "impossible for [the] defendant to pay the accrued judgment and interest at the rate of $100.00 per month during a normal lifetime." Osborne, 57 Ala.App. at 207, 326 So.2d at 768. Similarly, in this case, the trial court determined that the father owed accrued arrearages in the amount of $45,141.51, plus interest. In this case, if the father were able to make only monthly $100 installment payments to reduce the owed arrearages, he would be paying those installments for over 37 years; that computation does not include the additional interest that will accrue during the repayment period, and the father will therefore most likely never be able to retire the total amount of the arrearages during his lifetime. In addition, the trial court also modified the divorce judgment to relieve the father from maintaining a life-insurance policy to benefit the parties' children in the event of his death before they reach the age of majority.[1]
In State ex rel. Thompson v. Thompson, 586 So.2d 7 (Ala.Civ.App.1991), this court noted that "where a large arrearage is owed, the trial court may abuse its discretion in failing to award a large enough amount toward the arrearage to satisfy the debt within a reasonable period of time." Thompson, 586 So.2d at 8; see also Horwitz v. Horwitz, 897 So.2d 337 (Ala.Civ.App.2004), and Williams v. Williams, 554 So.2d 1046 (Ala.Civ.App. 1989). Although we note that a trial court has the discretion to set a reasonable arrearage-repayment schedule commensurate with a party's ability to pay (see Horwitz, 897 So.2d at 343), based upon the record before us we conclude that the trial court improperly attempted to restrict the mother's ability to collect the arrearage award. We find the adoption of the rationale in Osborne by the Supreme Court in Morgan to be controlling in this case; therefore, we conclude that the trial court's order permitting installment payments of the accumulated arrearages cannot bar any other process for collection of the judgment, such as garnishment. We reverse that portion of the judgment and remand the case for removal of the language restricting the mother's ability to pursue any legal means to collect the arrearage award.
The trial court's child-support award is affirmed; however, the trial court's judgment insofar as it attempted to restrict the mother's right to collect the arrearage award is reversed, and the cause is remanded with instructions to delete that portion of the judgment.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., and THOMPSON, and BRYAN, JJ., concur.
MURDOCK, J., concurs in the result, with writing.
*1037 MURDOCK, Judge, concurring in the result.
Given the holding of this court in State ex rel. O'Neal v. Jones, 646 So.2d 150 (Ala.Civ.App.1994), and considering the amount of child support called for by the Rule 32, Ala. R. Jud. Admin., guidelines based upon the current incomes of the parties, I am not persuaded that the factors recited in the main opinion alone would be enough to justify a deviation from those guidelines so as to result in the limiting of the father's obligation to only the payment of medical-insurance premiums and one-half of all uncovered medical and dental expenses. I concur in the result as to this issue, however, because I note that the record further indicates that the father is required to spend substantial sums of money in treating his own asthmatic condition. Accordingly, I cannot conclude that the trial court acted outside its discretion in the manner in which it reduced the father's monthly child-support obligation.
Further, consistent with the authorities cited in the main opinion relating to the continuing jurisdiction of the trial court and the placement of cases on administrative dockets, I come to the conclusion that the trial court arguably erred by placing this case on its administrative docket.[2] Neither party has raised this issue on appeal to this court, however.
NOTES
[1] We note that the mother did not contest that specific provision of the trial court's judgment.
[2] The judgment in this case was intended by the trial court to be final, and this court has treated it as being final for purposes of appeal. If circumstances change in the future so as to justify a modification of the father's child-support obligation, a new action  a modification proceeding  could be filed.